IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROY H.,
                              Plaintiff,

vs.                                                          **8:20-CV-287**

ANDREW M. SAUL, Commissioner of the          **MEMORANDUM AND ORDER**
Social Security Administration,
                              Defendant.

Roy H. ("Petitioner") filed his Complaint (Filing 1) seeking judicial review of the Commissioner's denial of his application for disability insurance benefits and moved this Court for an order reversing the Commissioner's final decision. Filing 13. The Commissioner filed a motion to affirm the agency's final decision denying benefits. Filing 15. For the reasons stated below, the Court grants Petitioner's motion and denies the Commissioner's motion.

## I. SUMMARY OF CASE

For the reasons stated below, the Court grants Petitioner's motion seeking social security disability benefits and denies the Commissioner's motion seeking to affirm the ALJ's decision to deny benefits. In reviewing this case, this Court finds as a matter of law that the one occupation the ALJ concluded the Petitioner could perform despite his limitations does not constitute a "significant range of semi-skilled or skilled work" supporting the ALJ's finding of no disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c).

Although the misapplication of law supports the Court's ruling in this case, the facts of this case support an appropriate award of social security disability benefits. Petitioner was gainfully employed for 27 years where he performed work at a satisfactory level. During at least part of his employment, Petitioner endured pain and was severely limited in his ability to work, but he kept working anyway. Petitioner's limitations, as diagnosed by medical professionals and

1

found by the ALJ, included bilateral carpal tunnel syndrome and peripheral neuropathy in his bilateral arms and hands—injuries that were contributed to by Petitioner's work.

Petitioner worked until the age of 56, presumably paying his social security taxes during his long-time employment as a productive member of society. Petitioner's claims and disability illustrate an appropriate situation for awarding social security benefits.

## II. BACKGROUND

As is relevant for the purposes of this case, Petitioner was born on October 18, 1957. Tr. 19. The alleged onset date of disability is July 14, 2014, which was his last day of employment. Tr. 19, 304. Petitioner completed his undergraduate degree in Industrial Technologies in May 1987 and is able to communicate in English. Tr. 19, 88, 348. Petitioner's past relevant work consists of his occupations as an eligibility worker and a lead eligibility worker. Tr. 19.

### A. Procedural History

Petitioner applied for disability benefits in June 2015. Tr. 98. The Social Security Administration denied his claim on March 18, 2016, finding that Petitioner had the residual functional capacity ("RFC") to perform his past relevant work as an eligibility worker. Tr. 110, 154-57. Petitioner timely requested reconsideration on March 23, 2016, with his attorney. Tr. 160. This reconsideration yielded the same result: Petitioner's condition did not prevent him from performing his past work. Tr. 161.

On June 17, 2016, Petitioner and his attorney timely requested a hearing before an administrative law judge ("ALJ") to contest the determination by the Social Security Administration. Tr. 170. ALJ Chris Yokus held a hearing on December 21, 2017. Petitioner and vocational expert Gail Leonhardt testified. Tr. 29-60. On March 30, 2018, the ALJ determined Petitioner was able to perform his past work and denied Petitioner's application for disability

benefits, citing 20 C.F.R. § 404.1520(f) (stating that if a claimant is capable of performing past relevant work, the claimant will be found not disabled). Tr. 143-144.

Petitioner again timely appealed, and the Appeals Council remanded the case on October 16, 2018, because the ALJ failed to consider objective medical evidence and Petitioner's subjective testimony regarding the use of his hands. Tr. 150-52. The Appeals Council instructed the ALJ to obtain additional records, give further consideration to Petitioner's RFC during the entire period, consider whether Petitioner had past relevant work and whether Petitioner could perform past relevant work, and obtain additional supplemental evidence from a vocational expert to determine whether Petitioner had acquired any transferable skills. Tr. 151-52. The ALJ held a second hearing on July 12, 2019, nearly four years after Petitioner first applied for benefits and five years after he stopped working. Tr. 65-97. Petitioner and a new vocational expert, Robin Cook, testified. Tr. 65-97. The ALJ again denied Petitioner's claim, though this time he found Petitioner was unable to perform past work but was able to perform work which exists in significant numbers in the national economy. Tr. 10-21. Petitioner timely appealed, and the appeals council denied review on May 21, 2020. Tr. 1-4. Petitioner now brings his claim before this Court. Filing 1.

### B.  Relevant Work and Medical History

Petitioner worked for over two decades for the Nebraska Department of Health and Human Services ("NDHHS"). Tr. 40. He worked as a vocational instructor at the Nebraska Center for Children and Youth prior to his tenure at NDHHS. Tr. 40-41. Petitioner started at NDHHS in 1990 and became a social service worker in 2002. Tr. 355. In 2010, his job changed to social service lead worker. Tr. 355. The vocational expert identified these jobs as "eligibility worker," DOT 195.267-010, a skilled job. Tr. 89. His job consisted of preparing cases and appeal hearing information. Tr. 80. Petitioner did not engage in any counseling, nor did he have a master's degree

in social work. Tr. 88. As a lead worker, Petitioner assisted other employees, though the amount of time he needed to spend typing at a computer was unchanged. Tr. 72-73, 80.

Petitioner began experiencing pain in his arms and hands as early as 2012, though perhaps even earlier.[1] Tr. 493. Petitioner's doctors recommended surgery in 2012 and in 2013, but he ran into problems with his insurance refusing to cover the cost of the surgery. Tr. 42, 73, 609-13, 620. His complaints of pain became more frequent in late 2013 and early 2014. Tr. 597, 550, 549, 570, 538-540, 545. Petitioner saw Dr. Christopher Ihle on April 21, 2014, who restricted Petitioner's keyboarding to "a maximum of one to two hours a day." Tr. 540. A month later, Dr. Manjula Tella instructed Petitioner to avoid repetitious use of his left hand due to carpal tunnel syndrome. Tr. 715. Despite his pain and work restrictions, Petitioner's supervisor stated Petitioner was able to keep up with other employees' levels of productivity. Tr. 307-08. However, Petitioner was unhappy with his own performance, feeling he was not fulfilling the standards he thought he needed to perform. Tr 83-84. Petitioner then took early retirement, giving up significant pension benefits. Tr. 84-85.

Petitioner's medical records show he has regularly experienced back pain since 2004, for which he was conservatively treated, usually with pain medication. Tr. 533, 577, 449-50, 453, 724, 837-38, 842, 971, 1053-54, 1045. Petitioner described the pain as occasional and not a regular problem. Tr. 533. The record further indicates Petitioner has a history of anxiety and adjustment disorder. Tr. 492, 611, 743, 845, 969. Petitioner met with Elizabeth Morell, Ph.D., in 2015 for a consultative psychological interview and report for the Nebraska Department of Education, Disability Determination Services as part of his application for disability benefits. Tr. 844-47.

---

[1] Petitioner's medical records from before 2000 were destroyed by his prior doctor's office. Tr. 529. Most medical records provided are between 2013 and 2019. The records indicate that Petitioner had surgery on his right thumb in February 2002. Tr. 625.

Petitioner denied any present depression or anxiety, and Dr. Morell concluded Petitioner's mental health did not raise any concerns. Tr. 847.

Dr. Meryl Severson examined Petitioner on February 9, 2016, at the request of the Disability Determination Section. Tr. 832. Dr. Severson stated that Petitioner had full strength and full range of motion in his arms and could "hold objects in his hands and perform fine motor tasks with his fingers for a short period of time." Tr. 838. Dr. Severson further commented that Petitioner could sit and rise easily, could easily transition from standing to sitting, had a normal gait, and could lift and carry up to forty pounds. Tr. 838.

On April 19, 2016, Petitioner reported to the Disability Determinations Section that his daily activities included mowing the lawn, watering and picking fruit from his garden, daily chores such as laundry and cooking dinner, and working on his car. Tr. 401. Petitioner described that he is only able to do these activities in short bursts, usually 30 minutes to an hour depending on the chore. Tr. 74-79, 401-03, 833.

Since the alleged onset date of his disability, Petitioner has continued to seek treatment for pain in his arms, hands, and back. Tr. 724, 307-08, 853, 862-63, 971, 973-74, 1015-17, 1029-36, 1038, 1053-54, 1042-45, 1020-21. Since leaving his job, Petitioner has utilized speech-to-text on his tablet in order to avoid typing, trying to prevent pain in his wrists and arms. Tr. 44. The ALJ points out that after 2014, no doctors had recommended work restrictions for Petitioner for the pain in his arms, hands, or back. Tr. 17. However, after July 2014, Petitioner was no longer gainfully employed, so he had more control of his schedule could regulate his own pain and activities without a doctor's note. Tr. 13.

## C. ALJ's Findings

An ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004))). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five. *See* 20 C.F.R. § 404.1520(a).

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). The ALJ in this case found that Petitioner was not gainfully employed after July 5, 2014, the alleged onset date. Tr. 12. While the claimant worked after the alleged onset date, the work was limited to his part-time home businesses including selling a topical pain reliever at weekend shows and working a concession stand with his family, netting on average $200 per month. Tr. 12-13, 136, 38-40, 69-71. The ALJ found these activities did not rise to substantial gainful employment. Tr. 12-13.

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to perform "basic work activities," 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), and satisfies the "duration requirement." 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions

such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522. If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). The ALJ found that Petitioner suffers from the following severe impairments: obesity, bilateral carpal tunnel syndrome, and peripheral neuropathy in his bilateral arms and hands. Tr. 13. These impairments significantly limit his ability to perform basic work activities. Tr. 13. The ALJ found that Petitioner's depression and anxiety "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Tr. 13.

Step three requires the ALJ to compare the claimant's impairments to a list of impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. pt. 404, Subpart P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. *See* 20 C.F.R. § 404.1520(a). The ALJ determined that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 14-15.

Step four requires the ALJ to consider the claimant's RFC to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f). "Past relevant work" refers to work performed by a claimant within the last fifteen years or fifteen years prior to the date that disability must be established. *See*

20 C.F.R. § 404.1565(a) and 416.965(a). If a claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).

The ALJ determined that Petitioner had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with postural, manipulative, and environmental restrictions and limitations. Tr. 15. The ALJ determined the Petitioner was subject to the following work restrictions: Petitioner can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; must avoid extreme cold temperatures and vibrations; and cannot perform more than occasional feeling, fingering, and handling with his bilateral upper extremities. Tr. 15. The ALJ did not find any non-exertional limitations. Tr. 15-19.

The ALJ considered both the objective medical evidence and Petitioner's subjective descriptions of his pain and limitations. Tr. 15-19. The ALJ described Petitioner's daily activities; inconsistencies between Petitioner's activities and restrictions imposed by his doctors; evaluations by Disability Determination Services' medical consultants; and third-party evidence from Petitioner's former supervisor at his prior place of employment. Tr. 15-17. The ALJ based the weight he gave each source on whether the source was consistent with other sources, including Petitioner's own description of his pain and limitations, and how long ago each medical opinion was offered. Tr. 15-17. The ALJ gave great weight to an evaluation by Dr. Meryl Severson and to the questionnaire completed by Petitioner's supervisor. Tr. 17-18. The restrictions on Petitioner by Dr. Tella were given limited weight, and the restrictions by Dr. Ihle were given little weight. Tr. 17-18.

Based on Petitioner's RFC, the ALJ determined Petitioner cannot perform any past relevant work. Tr. 19. The ALJ based this determination on testimony by the vocational expert. Tr. 19. The expert explained Petitioner's past relevant work required more handling, fingering, and feeling

than allowed by Petitioner's RFC. Tr. 90-91. The expert testified that Petitioner's skills would transfer to the job of case aide, with 39,338 jobs in the nation. Tr. 91. The expert did not describe how many jobs existed either in the claimant's region or in other regions of the country. *See* Tr. 91. The expert further stated that there was a potential for more than minimal vocational adjustment for Petitioner because "case aide" could refer to a number of different agencies or job types to which Petitioner's skills would not easily transfer. Tr. 91-92. The expert testified as follows:

Q      Would the claimant have any skills that are transferable to any other occupations under that RFC?

A      One moment. I'm going to check the manipulatives again. Okay, I so have one job, Your Honor, to which there would be transferability within the parameters of this hypothetical. Shall I proceed?

Q      Yes, please.

A      Okay, we have one job, that being the only example not being representative of some larger sample. The job in question is that of case aid, case aid, DOT 195.367-010, SVP 3 so semiskilled work, exertional level light. We have 39,338 in the nation.

Q      Would any additional skills in that job be required that the claimant does not have?

A      No.

Q      Would the, what would you testify to the vocational adjustment to that position?

A      Well, there is some potential for more than minimal adjustment and the primary reason for that would be either the setting, hold on just a second, sorry, would primarily be the setting and the reason for that is the case aid is fairly generic. It's not simply a position that might be, for example, an eligibility. It could be for a variety of types of agencies with various services and so there might be some differences in the setting and possibly the process, so, again, it would just really depend on where that occurred but, yes, there would be that potential.

Tr. 91-92.

At step five, the burden shifts to the ALJ to determine whether the claimant is able to do any other work in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); *see also Hunt v. Heckler*, 748 F.2d 478, 479-80 (8th Cir. 1984) ("This court has held on many occasions that once the claimant has shown a disability that prevents him from returning to his previous line of work, the burden shifts to the ALJ to show that there is other work in the national economy that he could perform."). Once an ALJ determines a claimant's exertion level, age, education, and work experience, the ALJ applies the Medical-Vocational Guidelines rules (the "Guidelines"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.. 20 C.F.R. § 404.1569. If a claimant's characteristics correspond to a rule in the Guidelines and if the claimant has no non-exertional limitations, the Guidelines direct a finding of disabled or not disabled. Because Petitioner has no non-exertional limitations, was in the advanced age category at the beginning of the relevant time period, had at least a high school education and could communicate in English, and had prior skilled work experience, the Guidelines direct a finding of "disabled" where Petitioner had no transferable skills and a finding of "not disabled" where Petitioner had transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.06, 202.07.

The ALJ relied on the vocational expert's testimony to satisfy his burden of finding that Petitioner had jobs available in significant numbers in the economy. Tr. 19. The ALJ found that Petitioner had acquired work skills from his past relevant work which are transferable to a semi-skilled case-aide job that exists in significant numbers in the national economy because the expert testified that Petitioner had transferable skills. Tr. 20-21. The ALJ incorrectly wrote that the expert "testified that a representative occupation the claimant could perform is case aide" (Tr. 19); however, the expert stated that the "one job, that being the only example *not being representative* of some larger sample" that Petitioner could perform was that of case aide. Tr. 91 (emphasis

added). Regardless, the ALJ concluded that Petitioner had transferable skills because he had acquired skills that would transfer to the occupation of case aide. Thus, the ALJ applied the Rule 202.07 of the Guidelines to find Petitioner not disabled. Tr. 21.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The Court must consider evidence that both supports and detracts from the ALJ's decision and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). "If, after reviewing the record, the [C]ourt finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the [C]ourt must affirm the ALJ's decision." *Id.* (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). The Court should not reverse merely because the Court would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The Eighth Circuit has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

Additionally, the Court must determine whether the Commissioner's decision "is based on legal error." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (quoting *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (internal citations omitted) (citing

*Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692 (stating allegations of legal error are reviewed de novo).

## B. Analysis

*1. The ALJ's RFC Determination is Supported by Substantial Evidence*

Petitioner argues the ALJ failed to fully develop the record regarding Petitioner's ability to walk and stand based on his history of back pain. The issue is whether substantial evidence, based on the record as a whole, supports the ALJ's determination of Petitioner's residual functional capacity. *See Teague,* 638 F.3d at 614 (citing 42 U.S.C. § 405(g)). The Court gives significant deference to the findings of the ALJ and will not reverse if the ALJ's finding can be supported by the record. *Hurd,* 621 F.3d at 738. This Court affirms the ALJ's determinations that Petitioner has the RFC to perform light exertion work, and that his back problems do not constitute a severe impairment.

The ALJ found Petitioner's RFC restricted him to less than the full range of light work. Tr. 15. The ALJ relied on substantial evidence in coming to his determination, including the Petitioner's own testimony, objective medical evidence from treating and consulting physicians, imaging results, and third-party evidence from Petitioner's supervisor at his former place of employment. Tr. 15-19. The ALJ considered Petitioner's medical history and determined Petitioner should be limited to only occasional fingering, feeling, or handling, due to the extensive record of carpal tunnel syndrome and work restrictions. Tr. 15.

The ALJ properly considered Petitioner's subjective complaints about his back and his descriptions of his daily activities. Tr. 13. The ALJ further reviewed the medical record and found Petitioner had no imaging studies and did not seek medical treatment for his back condition except

for treatment relating to some remote-in-time falls. Tr. 13. Substantial evidence from consulting physician Dr. Severson, treating physician Dr. Sullivan, and emergency room records indicate that Petitioner had no issues with his gait, had no problems standing, and "is able to walk a reasonable distance and climb a reasonable number of steps." Tr. 838, 951, 956, 958, 1016, and 1054.

Petitioner fails to provide evidence contrary to the ALJ's finding other than Petitioner's own testimony regarding his back pain and injuries. *See* Filing 14 at 24-25. Petitioner argues that the ALJ had the burden of developing the record; however, the ALJ had a substantial record to work from, and no opinions regarding Petitioner's back were undeveloped. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[T]he ALJ's duty to develop the record exists independent of the claimant's burden in the case. The ALJ must neutrally develop the facts. He does not, however, have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.") (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). The consulting and treating physicians already gave their opinions as to the status of Petitioner's back, and further inquiry would be redundant. Tr. 838, 951, 956, 958, 1016, 1054.

The ALJ's determination that Petitioner has the RFC to perform light work with restrictions (can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; must avoid concentrated exposure to extreme cold temperatures and vibrations; and can perform no more than occasional feeling, fingering, and handling with his bilateral upper extremities) is supported by substantial medical opinions in the record. Tr. 15. Petitioner's contention that he is further impaired by his chronic back issues is not supported by substantial evidence. The ALJ's determination of Petitioner's RFC is affirmed.

*2. ALJ's Light Exertional Work Determination is Supported by Substantial Evidence*

Petitioner's next argument is that the ALJ erred in determining that his past work was performed at the light exertional level. Filing 14 at 23-25. The question is whether the ALJ's finding is supported by substantial evidence. *See Perkins,* 648 F.3d at 897. This Court will affirm the ALJ if it is possible for the ALJ to draw their conclusion from the record. *Id.*

The ALJ properly relied on the vocational expert's categorization of Petitioner's past work as light. Tr. 19; 20 CFR § 404.1560(b)(2) ("A vocational expert. . . may offer relevant evidence. . . concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."). The expert based her opinion on Petitioner's descriptions of the work he performed after she asked the ALJ about Petitioner's work history. Tr. 87-90 ("[T]he appropriate DOT title is eligibility worker. . . exertional level sedentary though reportedly performed at light"). Petitioner's descriptions of the work he did for NDHHS further support the finding that his job as performed was light. Tr. 381-83 (Petitioner reported occasional bending the body downward and forward; reaching above the shoulder level; pushing/pulling of hand or foot controls; frequently lifting or carrying up to 10 pounds; and spending two hours per day walking and six hours per day sitting).

Petitioner fails to provide evidence contrary to the ALJ's finding other than Petitioner's own contradictory testimony. *See* Filing 14 at 20-21. Thus, the ALJ properly relied on the vocational expert's classification of Petitioner's past work as light, and the ALJ's determination is supported by substantial evidence and is affirmed.

### 3. ALJ's Transferable Skills Determination is Supported by Substantial Evidence

Petitioner argues that the ALJ erred when he relied on the SkillTran OccuBrowse website to determine whether Petitioner had transferable skills. *See* Filing 14 at 21. This Court will affirm the ALJ's determination of whether Petitioner had transferable skills if the determination is

supported by substantial evidence. *See Perkins*, 648 F.3d at 897. If the ALJ committed an error, but the claimant fails to "provide some indication that the ALJ would have decided differently if the error had not occurred," then the error is harmless and the ALJ will be affirmed. *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

The vocational expert testified that Petitioner had transferable skills. Tr. 91 (commenting that the expert could identify "one job, Your Honor, to which there would be transferability within the parameters of this hypothetical."). While the expert did not enumerate which of Petitioner's skills are transferable, neither the ALJ nor the vocational expert are required to specify such a list of skills. *Tucker v. Barnhart*, 130 Fed. App'x 67, 68 (8th Cir. 2005) ("[U]nder Social Security Ruling 82-41, the ALJ and [vocational expert] were not required to identify Tucker's transferable skills."). Thus, sufficient evidence in the form of vocational expert testimony supports ALJ's finding. That the ALJ listed skills from OccuBrowse has no bearing on the outcome, and even if the ALJ committed error by utilizing OccuBrowse, such error is harmless given the vocational expert's testimony. The ALJ's finding that Petitioner has transferable skills is affirmed.

### 4. The ALJ Incorrectly Applied Medical-Vocational Guidelines Rule 202.07

Petitioner argues that the ALJ erred in his step-five finding that Petitioner can perform jobs that exist in significant numbers in the national economy by applying Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.07 instead of § 202.06. Filing 14 at 16-18. This is a legal question, and this court will reverse if the ALJ incorrectly applied the law. *Collins*, 648 F.3d at 871 (quoting *Lowe*, 226 F.3d at 971).

This Court has already affirmed the ALJ's determinations regarding Petitioner's RFC, exertional level, transferable skills, level of education, and age, *supra* Part II(B), Sections 1-3. Once an ALJ determines that a claimant cannot perform any previous relevant work, the burden

shifts to the ALJ to prove that the claimant can perform other work in significant numbers in the claimant's region or in several regions of the country. *See* 20 C.F.R § 404.1560(c)(2) ("In order to support a finding that [a claimant] is not disabled, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy"); *Hunt*, 748 F.2d at 479-80 ("[O]nce the claimant has shown a disability that prevents him from returning to his previous line of work, the burden shifts to the ALJ to show that there is other work in the national economy that he could perform."). For individuals suffering solely from exertional impairments, with an RFC to perform light work, the ALJ may fulfill the burden by referring to the Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00. *Id.*

An individual of an advanced age with at least a high school education and an RFC that allows for light work is considered not disabled when the individual has skills that are transferable to a significant range of skilled or semi-skilled work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.07, 202.00(c). If the individual does not have transferable skills to a significant range of work, the individual is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.00(c), 202.06. The question of law presented here is whether a single occupation constitutes a "significant range of semi-skilled or skilled work" that justifies the ALJ applying Rule 202.07 rather than 202.06 to find Petitioner not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c).

SSR 83-10 provides a glossary for terms used in the Guidelines. SSR 83-10, 1983 WL 31251, at *4-7 (Jan. 1, 1983). The glossary defines terms like "light work," "residual functional capacity," and others; these definitions are binding on the Commissioner. 20 C.F.R. § 422.406(b)(1) ("Social Security Rulings. . . are binding on all components of the Administration"); *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (citing *Carter v. Sullivan*, 909 F.2d 1202, 1202 (8th Cir. 1990)) ("Secretary's failure to consider definitions in SSR 83–10 constituted plain abuse

of discretion"); *see also Hepp v. Astrue,* 511 F.3d 798, 807 (8th Cir. 2008) (relying on the definition of "medium work" in SSR 83-10 to affirm the ALJ's RFC determination). SSR 83-10 defines "range of work" as "[o]ccupations existing at an exertional level."

The vocational expert identified only one job, that of a "case aide," to which Petitioner's skills could transfer. Tr. 91 ("[W]e have one job. . . that of 'case aid[e]'"). However, the Commissioner argues that the expert described the job of case aide as "fairly generic," so the job could be applied to a variety of agencies or types of jobs, thus satisfying the "significant range of work" requirement in the Guidelines. Filing 16 at 21 (citing Tr. 91-92). Contrary to the Commissioner's argument, SSR 83-10 defines "range of work" as "[o]ccupations existing at an exertional level[.]" SSR 83-10, 1983 WL 31251, at *7.[2] Further, in describing the occupation of case aide as "generic," the expert was attempting to limit, not expand, the number of jobs available to Petitioner. Tr. 91. The expert explained that because case aide was a "generic" occupation, there was a chance Petitioner would need more than a minimal vocational adjustment in some circumstances. Tr. 91-92. For Petitioner to have transferable skills, as a claimant of advanced age who is closely approaching retirement age, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f). This testimony does not support the assertion that more occupations are available to Petitioner than the single one identified by the vocational expert.

The United States Court of Appeals for the Ninth Circuit has addressed the legal question as to whether one identified occupation is sufficient for an individual capable of light work to be found not disabled. *See Lounsbury v. Barnhart,* 468 F.3d 1111 (9th Cir. 2006). The *Lounsbury*

---

[2] Throughout the record and the briefing, the ALJ, the Commissioner, and an expert in this case at times utilize the term "job" to describe the occupation of "case aide." *See, e.g.*, Tr. 91-92. After review of applicable law, the Court concludes that "case aide" is a distinct occupation as utilized in SSR 83-10 and Rule 202.00(c). "Case aide" is listed as an occupational title in the Dictionary of Occupational Titles (4th Ed., Rev. 1991).

Court concluded "the term 'work' under Rule 202.00(c) means distinct *occupations,* and 'significant numbers' is no substitute for and cannot satisfy the plain language of Rule 202.00(c) requiring a 'significant *range* of ... work' (emphasis added)." *Id*. at 1117 (alteration in original). The Ninth Circuit further held:

> To interpret "significant range of ... work" to mean simply "work" nullifies the concept of "range" contained in the text. Congress might have drafted Rule 202.00(c) to require only a "significant number of jobs"; it chose not to do so.

*Id.*

In addition, two United States District Courts within the Eighth Circuit have likewise held that one occupation is not sufficient to satisfy the Guidelines' requirement that a claimant who can perform light work must have skills that are transferable to a significant range of work to be determined not disabled. *Collis v. Colvin*, 204 F.Supp.3d 1046, 1056 (S.D. Iowa 2016) (awarding disability benefits for a claimant limited to light work when "[t]he vocational expert specifically testified that the only job. . . to which Plaintiff's skills would transfer, was that of personal attendant"); *Prokes v. Colvin,* No. 14-cv-915, 2015 U.S. Dist. LEXIS 193738, at *8 (D. Minn. Mar. 30, 2015) ("[O]ne occupation alone cannot constitute a 'significant range' of work."); *see also Sherry B. v. Saul*, No. 20-140-JJM-PAS, 2021 WL 508517, at *1 (D. R.I. Feb. 11, 2021) ("Because [the claimant] is over 55 and her limitations [allow her to perform] only one other job, such a finding requires an award of disability"). The Commissioner correctly states that none of these opinions are controlling; however, the Eighth Circuit instructs this Court to consider the definitions given in SSR 83-10. *Hajek*, 30 F.3d at 92.

The Commissioner points to *Brian B. v. Berryhill*, No. 18-cv-2072, 2019 WL 4898471 (D. Minn. June 4, 2019) to support the finding that one occupation is sufficient to satisfy the requirement that a claimant must have transferable skills to a significant range of work. However,

*Brian B.* is distinguishable from the present case. In *Brian B.*, the District of Minnesota found that one occupation was sufficient to satisfy the Guidelines for a claimant who was limited to sedentary work, not light work. *Brian B., 2019 WL 4898471*, at \*6. The Guidelines for determining whether a claimant is disabled are different for a claimant who is restricted to light work as opposed to a claimant who is limited to sedentary work. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00 (providing guidelines for claimants limited to sedentary work) *with* § 202.00 (providing guidelines for claimants limited to light work). The finding that one occupation is sufficient under the Guidelines for claimants limited to sedentary work is not applicable to the Plaintiff, who is restricted to light work. Additionally distinguishing *Brian B.* from the present case, for the period of time during which the claimant was able to perform light work, the claimant had several occupations available to him, including "salesperson in auto accessories or general merchandise and a food sales clerk." *Brian B.*, 2019 WL 4898471, at \*5. Thus, the Court concludes *Brian B.* does not support the contention that one occupation is sufficient under the present circumstances to find that the Plaintiff, who the ALJ concluded can perform light work, is not disabled.

The Commissioner also cites *Hobbs v. Berryhill*, No. CV 17-619 (FLN), 2018 WL 3999582 (D. Minn. Aug. 21, 2018). However, *Hobbs* is not persuasive because the claimant had two occupations to which his skills would transfer, while Petitioner only has one. *Id.* at \*12.

In this case, the ALJ's findings regarding Petitioner's age, education, and residual functional capacity are all supported by substantial evidence on the record as a whole. *Hajek* requires the Court and the ALJ to consider the definition in SSR 83-10, defining "range of work" as "Occupations existing at an exertional level." SSR 83-10, 1983 WL 31251, at \*7. Where the claimant's skills are not transferable to a significant range of work, the claimant is considered disabled and is entitled to benefits. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06.

The Court concludes that under the facts of the present case, including the Petitioner's age and other health limitations, the one occupation identified by the vocational expert for which Petitioner could perform is not sufficient to support a conclusion that Petitioner has a "significant range of work" to which his skills could transfer.[3] The record and the ALJ's findings of fact warrant a finding of disabled and a granting of benefits. *See Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984) ("Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate."); *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992) ("Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate."). In this matter, the record clearly indicates that the application of Medical-Vocational Guidelines Rule 202.06 is required, so it is appropriate for this Court to reverse and remand to the Social Security Administration for the calculation of benefits.

### III. CONCLUSION

The Court finds the Commissioner's decision denying Petitioner's claim for benefits under the Act should be reversed, and benefits should be granted to the Petitioner for the relevant period.

**IT IS ORDERED:**

1. The Commissioner's motion to affirm the Commissioner's final decision (Filing 15) is denied;

2. Petitioner's motion to reverse the Commissioner's final decision (Filing 13) is granted;

3. The ALJ, and thereby the Commissioner, is reversed;

---

[3] This Court declines to opine today whether there may be circumstances under different facts where one occupation might be sufficient to sustain a finding of no benefits for a claimant able to perform light work under SSR 83-10 and Medical-Vocational Guidelines Rule 202.00(c).

4. This action is remanded for consideration of the amount of benefits payable to Petitioner; and

5. A separate judgment will be entered.

Dated this 8th day of July, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge